We'll turn to the next case on our calendar, which is Lizette Vega-Ruiz v. Northwell Health. Good morning, counsel. Good morning, counsel. Good morning, Your Honors. We'll hear from counsel for appellant. That's you, Mr. Brzezinski. Yes. May it please the court. The Affordable Care Act is an act of Congress enacted in 2010 without a limitations period. 42 U.S.C. Section 1811-16A and the Affordable Care Act has undisputedly created a private right of action, and that should be the end of the matter. The appellant had four years to file her civil action, and thus her claim is timely. And the district court and the appellee claims that the Supreme Court's analysis in Jones v. R. R. Donnelly supports its position. However, it does not. The Supreme Court's analysis in Jones dealt with the issue of whether the four-year federal statute of limitations applied to a claim under a post-1990 amendment to a pre-1990 statute. Section 1557 does not amend Section 504 of the Rehabilitation Act. Rather, Section 1557 is a new standalone statute that is distinct from Section 504 of the Rehabilitation Act. To the extent Section 1557 references Section 504 of the Rehabilitation Act, the holding in Jones still supports the conclusion that the four-year statute of limitation applies to claims under Section 1557. The Supreme Court expressly rejected the Seventh Circuit's decision by overturning the Seventh Circuit that the four-year statute of limitations was restricted to cases in which plaintiff causes of action is based solely on a post-1990 statute that establishes a new cause of action without reference to pre-existing law. This is precisely the interpretation that the District Court has attempted to revive by holding that a claim under Section 1557 arises under the underlying anti-discrimination statute. Plaintiffs claim, although Section 1557 references pre-existing anti-discrimination statutes for them, to say the least, a new cause of action under Section 1557 itself was made possible by the 2010 enactment of the ACA. So, appellants… But wasn't everything the plaintiff needed to sue in the Rehabilitation Act? That's what the judge found, that the ACA added nothing to what was already in the Rehabilitation Act. So, that is not the case, and there was… What's not the case? That the judge didn't find that, or that you're saying that's not true? So, the Rehabilitation… the Formal Care Act is not just merely a Rehabilitation Act by another name. It's not an amendment to the Rehabilitation Act. No, that's not what the judge said. The judge said that every part of the cause of action was already in the Rehabilitation Act, and then the ACA added nothing to Ms. Vegas Ruiz's cause of action. Tell me where that's wrong. Sure. So, the Ninth Circuit and Schmidt v. Kaiser, Kaiser Foundation Health Plan of Washington, which was recently decided on July 14, 2020, compared the Rehabilitation Act and the Affordable Care Act as it pertains to a discrimination against deaf persons. And in that case, the Ninth Circuit explained that the Section 1557 is both broader in a lot of respects than the Rehabilitation Act. It provides more protections than the Rehabilitation Act, and there are several different ways in that it does that. The Rehabilitation Act, in its statute, prohibits discrimination solely by reason of disability. However, the Affordable Care Act is broader than that. In what way? Applicable to this case? So, if you look at the regulations as applicable to this case, it cites that you have to give primary consideration to the requests of the deaf person, while under the Rehabilitation Act, you don't. There is heightened standards that are provided to claims under the Affordable Care Act than under the Rehabilitation Act. So, you could violate under the Rehabilitation Act. I won't say violate. You could engage in acts that don't rise to the level of those required by the ACA and get by with it. Correct. So, there may be some claims that maybe would fail under the Rehabilitation Act, but survive under the Affordable Care Act due to the heightened protections that the Affordable Care Act provides. And what are those with respect to Ms. Vega Ruiz? So, in our brief, we cite two regulations. Specifically, I'm just going to pull that up here. So, in 85 Federal Regulation 37160, it says, and this is in June 19th of 2020, since the 2015 NPRM, the department has held that it's appropriate as a condition of receipt of federal financial assistance from HHS to hold all recipients to a higher 2010 ADA Title II standard regarding effective communication with individuals with disability. So, as you can see... But did Ms. Vega Ruiz need the higher standard in order to prevail on her cause of action? Excuse me, Your Honor, can you repeat that? The higher standard? Well, that can certainly come into play because she made a request for a sign language interpreter and wasn't provided it. And to the extent that they say that they gave her alternative aids and not deferred to her preferred method of communication, that would certainly come into play in this case. All right, counsel, you've reserved three minutes for rebuttal. We'll hear from counsel from Northwell Health. Good morning, Your Honors. May it please the court, my name is Daniel LaRose of Collazo and Kyle for the appellees. This case was properly dismissed as untimely because the ACA explicitly borrows the enforcement mechanisms of the Rehabilitation Act, and the Rehabilitation Act has a three-year statute of limitations in New York. So you're saying that the ACA is limited, period, to a Rehabilitation Act three-year statute of limitations? Yeah, the ACA borrows from four different statutes. In this case, the only one at issue is the Rehabilitation Act. And therefore, for disability claims under the ACA, the statute of limitations are those of the Rehabilitation Act in whichever state the claim is brought. So when 1658 was passed with a four-year statute of limitations for federal causes of action that aren't otherwise identified, in an effort to avoid trying to hunt down and figure out what the applicable, excuse me, what the comparable state law statute of limitations was, we're right back in the same soup, right? Because you want to parse it out and say, no, well, you go here or you go there, and then the courts are taking time, just like we are here today, and like Judge Hurley did below, figuring out which statute of limitations applies. Well, Your Honor, I would posit that the statute did explicitly provide for the statute of limitations because it provides for the enforcement mechanisms of the four statutes it borrows from. Again, in this case, we're looking at the Rehabilitation Act. So Congress could have been completely silent on it, but they weren't. They called for the enforcement mechanisms of the Rehabilitation Act, and Congress already very well knew what the standards for the Rehabilitation Act, as well as the three other statutes were when they incorporated this. If they wanted to create a standardized statute of limitations for all claims under the Affordable Care Act, they could have easily done so by explicitly stating that there would be a new statute of limitations. But they clearly didn't want to standardize because they made it the standards for each of the four statutes it borrows from. Further, I would say that the Supreme Court in Jones took painstaking analysis in determining whether a claim could have been brought under an act of Congress that was passed after December 1, 1990, or if it was made possible by pre-December 1, 1990, statutes. And in this case, it's very clear that the only reason plaintiff has brought her claims under the Affordable Care Act is because she's trying to get this four-year statute of limitations, which Jones basically forbids for shopping for a new statute of limitations. As Your Honors have already referenced, there's no difference in Rehabilitation Act claims and Affordable Care Act claims here. Every claim that plaintiff brings in this case could have been brought under the Rehabilitation Act. The Affordable Care Act doesn't provide any additional rights or methods of recovery. And so one is necessarily a subset of the other. Further, the court in Jones held that what matters is the substantive effect of the enactment, the creation of new rights of action and corresponding liabilities, not the format in which it appears in the code. The cases that Ms. Vega recites to simply cite to Jones but they don't follow its holdings, they look at the label that says Affordable Care Act and say, okay, new statute and therefore new cause of action. However, they don't do any of the analysis that the court undertook in Jones to determine whether or not that the claims could have been brought prior to the enactment of the Affordable Care Act. And here, again, it's very clear that all of these claims could have been brought simply under the Rehabilitation Act. And because they were able to be brought under the Rehabilitation Act, they don't arise under the Affordable Care Act because they're not made possible by the Affordable Care Act. But you heard our opposing counsel say there are different standards that you apply under the ACA than under the Rehabilitation Act. Isn't that correct? Well, as a threshold matter, counsel and Ms. Vega-Ruiz did not raise these arguments with the district court, so I believe they're barred from doing so here. But something that counsel didn't point out is these rules and regulations were not in effect at the time that Ms. Vega-Ruiz visited the hospital. They were proposed rules, but the case law is extremely clear that proposed rules have no binding legal effect. In fact, even I believe in our brief, we quote the proposed rules and regulations that are deciding whether to put in Title II or Title III standards. And so those standards did not apply at the time of her visit, and therefore there is zero difference between the protections of the ACA and the Rehabilitation Act for this case. Are they not entitled to some deference when we're trying to figure out the very question we're discussing? I believe that they are not. The agency is saying, well, this is what's really at play here, and it turns out to be more heightened, more nuanced than just what's available under the Rehabilitation Act. Your Honor, as my brief points out, there is simply nothing in the statute that would allow these additional readings. And there's no room for interpretation that's simply brought anew under these proposed rules, and so there's no binding legal effect. And in addition, the rules and regulations are not acts of Congress, so 1658 isn't really applicable to the rules and regulations. And in this case, we would only be looking at the 1557 statute. Counsel, if this lawsuit was brought within the correct statute of limitations, would Ms. Vega-Ruiz have gotten an ASL assistant when she went to the hospital with her brother? I'm sorry, I don't understand the question. I'm asking, could she have prevailed in this lawsuit against Northwell Health, who didn't give her an assistant to give her ASL translation? Could she have prevailed? Could you prevail now if you go to Northwell Health and you are a companion of someone who needs your advice and support? Do you still not get ASL? Companions have been, by Northwell policy, always given the necessary assistance. If this happened now when she filed timely, it's still doubtful that she would be able to prevail because she actually was given an accommodation. I'm sorry, Ms. Vega-Ruiz talks outside, out of both sides of her mouth in the complaint. She says she was not given any type of accommodation. But when it suits her argument, she also says that she was given a written translator and someone to read lips as well as a Spanish to English translator. So it's hard to say what... But she needed the ASL. She needed ASL, she claims. Well, yes, she is claiming that. Just because a patient or a companion wishes to have an ASL interpreter, it doesn't necessarily mean they are entitled to one if either the entity can show that it was not available and they had other accommodations available. That's the only way she hears. So you mean to this very day, a companion would not get ASL at one of your hospitals? No, I'm not saying that. It's Northwell's policy that both companions as well as patients are given accommodations. But I will say, Your Honor, no discovery has really taken place in this case. I know that. That's why I'm just asking if today anything has changed. Nothing's changed because even before these proposed rules and regulations, Northwell did have a policy of providing accommodations to both patients and to companions. But not the accommodations she particularly sought. Northwell did have provisions for such interpreters. Okay, well, then I don't understand why she didn't get one. In any event, does that conclude your argument? Your Honor, I would just say again that in order to adopt plaintiff's reading of the law, we would have to reduce the Supreme Court's analysis in Jones to irrelevant dicta. They clearly went out of their way to decide whether a claim could have been brought before the additional legislation. And in this case, it's clear that the Rehabilitation Act would have provided Ms. Vega-Ruiz an avenue to bring her claims even before or in absence of the Affordable Care Act. And then I would also just want to say that counsel has tried to distort Jones in a way that applies only to amendments of already enacted legislation. But such a reading is too narrow. There's nothing in that case or any other case that claim that the analysis has to be tailored simply to amendments. It could be to additional pieces of legislation that are not amendments of previous legislation. Thank you, counsel. Mr. Wyszynski, you reserve three minutes for rebuttal. Yes, Your Honors. So the appellee has given no response to the plain text of the statute. You know, we can talk about Jones and whether, you know, Jones meant amendments or statutes or whatever. But if you look at the plain language of the statute, which we're required to do first, it says that, you know, any act of Congress enacted after December 1st, 1990, without a limitations period, gets four years, period, full stop. And so, you know, to engage in this kind of, you know, does it provide this remedy? Is it the same? Does it have the same force mechanisms? It's explicitly what Jones overturned from that Seventh Circuit decision, which says you don't go back and do all of this going back and forth and seeing whether it was, you know, a clean statute or whether it was applied in a new way. But, you know, even so, so we should just stop there. But even looking at Jones, Jones specifically looked at an amendment. And if you look at all the case law, Vega-Ruiz and the case that Vega-Ruiz relied upon, and then, you know, there was a few other district court decisions that relied on Vega-Ruiz, are the only post-1990 statutes that do this kind of, you know, work about enforcement mechanisms and, you know, is it the same? Is it different? They don't do that because the statute is so clear that no other court has had to do this. When you say the statute, you mean the Affordable Care Act? That USC Section 18116A says that any act of Congress after December 1, 1990 that doesn't have an explicit statute of limitations has a four-year statute of limitations. And there's no dispute that this is a 2010 statute without a statute of limitations. So just looking at the plain language of the statute, this is why no other court except Vega-Ruiz and the case that it relied upon in the Northern District has a footnote that says that it's basically the Rehab Act by another name. There's nothing different. And so, you know, I urge the court to not go through this analysis about, you know, whether it's the same or it has heightened remedies or less remedies because if we look at the plain language, that's all we need. And nonetheless, if you look at the Schmidt case that I cited in the Ninth Circuit, it explicitly deconstructs the statute and the regulations and shows how they're different and why they're not the same. And if you look at the regulations, it goes back to as far as 2015 where it provides these heightened standards under the Affordable Care Act above and beyond the Rehab Act. Would you have brought the case under the Rehab Act, setting aside the statute of limitations problem? I mean, the Rehab Act has a private right of action and the Affordable Care Act has a private right of action. Right. Does the Rehab Act cover this? The Rehab Act would cover discrimination under this, but it has different types of threshold matters that you need to meet, you know, differences in language. Under the Rehab Act, you have to prove that you were discriminated solely by reason of disability. Under the Affordable Care Act, you have to prove that it was on the grounds of disability. So it's a little bit different statute. And that's citing the statutory text itself. So they are different in some ways and they have different nuances. Thank you. Thank you both. We'll reserve decision. Thank you, Your Honors. Thank you. The next matter on our calendar is United States.